IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT JAMES HOWARD,           *
# 03914-003,                   *
                               *
     Petitioner,               *
                               *     CRIMINAL NO. 14-00011-CG-B
vs.                            *     CIVIL ACTION NO. 15-00620-CG
                               *
UNITED STATES OF AMERICA,      *
                               *
     Respondent.               *

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Robert James Howard's
Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C.
§ 2255 (Doc. 33), the Government's Response in Opposition (Doc.
35), Howard's "Traverse to United States's Opposition to Motion to
Vacate, Set Aside, or Correct Sentence" (Doc. 37), Howard's Notice
of Eligibility/Motion to Vacate/Motion for Appointment of Counsel
(Doc. 38), and Howard's Motion to Amend Previously Submitted Motion
to Vacate, Set Aside, or Correct Sentence (Doc. 39).  This action
was referred to the undersigned Magistrate Judge for report and
recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b)
of the Rules Governing Section 2255 Proceedings and is now ready
for consideration.[1]  Having carefully reviewed the record, the

---

[1]    The Honorable Senior United States District Judge Callie V.S.
Granade presided over the guilty plea hearing and sentencing in
this action.  The undersigned has reviewed Petitioner's motion and
all other relevant documents in the Court's file and has fully
familiarized herself with the proceedings before Judge Granade.

undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2]

Upon consideration, the undersigned hereby recommends that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DENIED**, that his motions to amend and for appointment of counsel be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Robert James Howard. The undersigned also recommends that should Howard file a certificate of appealability, it should be denied, as he is not entitled to appeal *in forma pauperis*.

## I.    PROCEDURAL BACKGROUND

On January 31, 2014, Robert James Howard was indicted on the following charges: (1) conspiracy to possess cocaine containing a cocaine base; (2) possession with the intent to distribute crack cocaine; (3) knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (4)

---

[2]    A district court is not required to hold an evidentiary hearing every time a § 2255 petitioner simply asserts a claim of ineffective assistance of counsel. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required when the petitioner's allegations are affirmatively contradicted by the record." Id. (quoting Guerra v. United States, 588 F.2d 519, 521 (5th Cir. 1979)).

being a felon in possession of a firearm. (Doc. 1 at 1-4). On August 11, 2014, Howard's appointed counsel advised the Court of Howard's desire to enter into a counseled plea agreement. (Doc. 16). In the plea agreement, Howard agreed to plead guilty to the drug conspiracy offense (count one) and possession of a firearm in furtherance of a drug trafficking crime (count three).[3] (Doc. 17 at 1-2).

As part of the plea agreement, Howard agreed to waive his right to file "any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255." (Id. at 11). However, Howard reserved his right to timely file a direct appeal challenging any sentence imposed in excess of the statutory maximum or any sentence which constituted an upward departure or variance from the guideline range, and Howard also reserved his right to claim ineffective assistance of counsel in a direct appeal or a 28 U.S.C. § 2255 motion. (Id.). In return, the Government agreed that it would not bring any additional charges against Howard related to the facts underlying the indictment and that it would recommend to the Court that Howard be sentenced at the low end of the advisory sentencing guideline range or at the low end of any mandatory

---

[3]    Attached to the plea agreement was a factual resume that outlined the elements of the offenses and the facts supporting Howard's plea to the offenses. (Doc. 17 at 14-20).

statutory sentence, as determined by the Court. (Id. at 6). The Government also agreed that if, *in its sole discretion*, Howard provided substantial assistance in the investigation or prosecution of another criminal offense, the Government would move for a downward departure in accordance with U.S.S.G. § 5K1.1 or would file a Rule 35 motion pursuant to the Federal Rules of Criminal Procedure. (Id. at 6-8). The Government further agreed that if Howard's cooperation did not amount to substantial assistance, as determined by the Government, the Government would recommend that Howard be sentenced at the low end of the sentencing guidelines range. (Id. at 9).

On August 18, 2014, Howard entered a plea of guilty to counts one and three of the indictment. (Doc. 18). During the guilty plea hearing, Howard was placed under oath and Judge Granade questioned him regarding the voluntariness of his plea. Howard testified as follows:

> THE COURT: All right. Mr. Howard, I understand you are pleading guilty to counts one and three of the indictment, is that correct?
>
> DEFENDANT HOWARD: Yes, ma'am.
> . . .
>
> THE COURT: Have each of you received a copy of the indictment, the written charges in your case?[4]
>
> DEFENDANT HOWARD: Yes ma'am.

---

[4] Three defendants participated in the guilty plea hearing before Judge Granade. Each Defendant answered the questions individually.

. . .

THE COURT: Are you fully satisfied with the counsel, representation, and advice given to you in your case by your lawyer?

DEFENDANT HOWARD: Yes ma'am.
. . .

THE COURT: Now, for each of you I have received a written plea agreement and an attached factual resume and I want you to take a look at those documents and tell me on the record whether that is your plea agreement and factual resume and whether you signed those document.

THE COURT: Mr. Howard?

DEFENDANT HOWARD: Yes, ma'am.
. . .

THE COURT: Did you have the opportunity to read and discuss your plea agreement with your lawyer before you signed it?

DEFENDANT HOWARD: Yes ma'am.
. . .

THE COURT: Do you have any agreements with the government concerning your case that are not written down in your plea agreement?

DEFENDANT HOWARD: No.
. . .

THE COURT: . . . Do you understand the terms of your plea agreement?

DEFENDANT HOWARD: Yes ma'am.

. . .

THE COURT: Has anyone made any promise or assurance to you of any kind in order to persuade you to accept this plea agreement?

DEFENDANT HOWARD: No ma'am.
. . .

THE COURT: Has anyone threatened you in any way to persuade you to accept the plea agreement?

DEFENDANT HOWARD: No ma'am.
. . .

THE COURT: Do you understand that certain of the terms of your plea agreement are merely recommendations to the Court and that I can reject those recommendations without permitting you to withdraw your plea of guilty and impose a sentence that's more severe than you might anticipate?

DEFENDANT HOWARD: Yes, ma'am.
. . .

THE COURT: Has anyone attempted in any way to force you to plead guilty?

DEFENDANT HOWARD: No, ma'am.

. . .

THE COURT: Has anyone threatened you in any way?

DEFENDANT HOWARD: No, ma'am.
. . .

THE COURT: Has anyone made any promises or assurances that are not in the plea agreement in order to get you to plead guilty?

DEFENDANT HOWARD: No, ma'am.

. . .

THE COURT: Are you pleading guilty of your own free will because you are guilty?

DEFENDANT HOWARD: Yes, ma'am.
. . .

THE COURT: All right. Mr. Howard, in your case you are pleading guilty to two separate counts. The maximum penalty the Court could impose upon conviction of count one – I understand there's an enhancement in your case

because you have a prior conviction. So the maximum penalty the Court could impose for a second or subsequent felony drug conviction [is] a mandatory statutory penalty of at least 10 years in prison up to life imprisonment, an $8 million fine, a supervised release term of at least eight years, and any restitution that the Court finds is appropriate.

Now, count three of the indictment is the firearm count, and the maximum penalty that I could impose on this would be at least five years' imprisonment consecutive to whatever you receive on count one, a fine not to exceed $250,000, a term of supervised release of up to three years which would follow any term of imprisonment, and if you violated that condition you could be in prison for that entire term, and a mandatory special assessment of $100. So that's at least a minimum total of 15 years in prison. Do you understand that?

DEFENDANT HOWARD: Yes, ma'am.

. . .

THE COURT: All right. Now, the United States Sentencing Commission has issued sentencing guidelines for judges to consider when determining the sentence in a criminal case. Have you and your attorney talked about how the sentencing guidelines might affect your sentence?

DEFENDANT HOWARD: Yes, ma'am.

. . .

THE COURT: Do you understand that the Court will not be able to determine the advisory guideline sentencing range for your case until after the probation office has prepared a presentence report and you and the government have had the opportunity to challenge the reported facts and the application of the guidelines recommended by the probation office and that the sentence imposed may ultimately be different than any estimate your attorney or anybody else might have given you in the case?

DEFENDANT HOWARD: Yes, ma'am.

. . .

THE COURT: And do you further understand that after your initial advisory guideline range has been determined, the Court has the authority in some circumstances to

depart either upwards or downwards from that range and will also examine other statutory factors that could result in a sentence that's either greater than or lesser than that called for by the sentencing guidelines?

DEFENDANT HOWARD: Yes, ma'am.

. . .

THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that is imposed? However, each of your plea agreements contains a limited waiver of your right to appeal and in each of your cases you have retained the right to appeal only if sentence is imposed in excess of the statutory maximum, if sentence is imposed that constitutes an upward departure or variance from the sentencing guideline range, or if you have a claim of ineffective assistance of counsel? Do you understand that you have waived your right to appeal in all but those three circumstances outlined in your plea agreement?

DEFENDANT HOWARD: Yes, ma'am.

. . .

THE COURT: Do you also understand that in your plea agreement you have waived your right to file a 2255 petition or a collateral attack on your conviction or sentence after it becomes final, unless you have a claim of ineffective assistance of counsel?

DEFENDANT HOWARD: Yes, ma'am.

. . .

THE COURT: All right. Mr. Howard, in order to convict you of the offenses to which you are pleading guilty, on count one the government would have to prove that two or more people in some way or manner came to a mutual understanding to try and commit an unlawful and common plan, as charged in the indictment, that the object of the unlawful plan was the possession with intent to distribute a Schedule II controlled substance -- I believe in this case it was crack cocaine – and that you, knowing the unlawful purpose of the plan, willfully joined in.

As to count three, the government would have to prove that you committed the drug-trafficking offense that was charged in count one, that you possessed the firearm that was described in count three, and that the possession of that firearm was in furtherance of a drug-trafficking offense.

Do you understand what the government would have to prove in order to convict you of counts one and three of this case?

DEFENDANT HOWARD: Yes, ma'am.
. . .

THE COURT: All right. Now, earlier I asked each of you if you had signed the factual resume attached to your plea agreement and you said that you had. And I want to make sure that you understand that by signing the factual resume you are agreeing that the government could prove the facts set forth in that document in order to support your guilty plea. Do you understand and agree to that?

DEFENDANT HOWARD: Yes, ma'am.

(Doc. 36 at 3, 6-17). The Court accepted Howard's guilty plea and expressly found that he was fully competent and capable of entering an informed plea and that his plea of guilty was knowing and voluntary. (Id. at 17).

Howard's sentencing hearing was conducted on November 18, 2014. (Doc. 26). Howard was sentenced to 120 months of imprisonment as to count one (drug conspiracy), to be followed by a consecutive term of imprisonment of sixty months as to count three (possessing a firearm in furtherance of a drug trafficking crime). (Id. at 2; Doc. 27 at 2).

On December 2, 2014, Howard's attorney filed a Notice of No Appeal that was executed by both Howard and his attorney on

November 25, 2014.  (Doc. 28).  The notice stated, in relevant part: "I have been advised by the Court and by my attorney of my right to appeal my conviction and sentence.  I have consulted with my attorney, who has explained the advantages and disadvantages of taking an appeal.  I have had sufficient time to consider my options and require no further explanation." (Id.).

Howard filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on November 26, 2015.[5] (Doc. 33).  In his petition, Howard raises the following claims: (1) his attorney was ineffective because he did not investigate the charges or evidence or attempt to ensure that the indictment or arrest warrant were proper in his case; (2) his attorney was ineffective because he improperly advised Howard that if he cooperated with the Government he would receive a lesser sentence; and (3) his attorney was ineffective because he did not file a direct appeal, and Howard did not know that he could file an appeal on his own.  (Id. at 5-6, 11).

In his brief in support of his motion, Howard argues that his attorney told him he had no defense, that a proffer was his only

---

[5]    Although the instant petition was received by the Clerk's Office on December 8, 2015, pursuant to the mailbox rule, a prisoner's petition is deemed filed on the date it is delivered to prison officials for mailing, absent contrary evidence. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

hope of getting any type of deal, and that he had no way of prevailing at trial. (Doc. 33-1 at 2). According to Howard, he asked his attorney to investigate the circumstances of the indictment and arrest, but his attorney refused to do so. (Id.). Howard asserts he finally agreed to "proffer to the government" after which his attorney told him he had done a good job, and that during their only meeting between the time of Howard's guilty plea and his sentencing, his attorney "assured him that the government would move to reduce his sentence because of his proffer." (Id. at 2-3). Howard asserts that he wrote his attorney at least twice to request that he contact the Government regarding a sentence reduction but received no response. (Id. at 4). Howard contends that he fully intended to go to trial but for his counsel's promise that if he made a proffer to the government, he would get a less than minimum mandatory sentence. (Id. at 3). Howard argues the outcome of his case would have been different but for his attorney's deficient performance because he would have found evidence and would have gone to trial. (Id. at 4).

In its response in opposition to Howard's petition, the Government argues that Howard's petition is due to be denied because his claim of ineffective assistance of counsel, based upon a lack of investigation, was waived by his guilty plea. (Doc. 35 at 2). The Government also argues that to the extent Howard claims his attorney undermined the voluntary and intelligent nature of

his plea, the claim is without merit and refuted by the record, including Howard's plea agreement. (Id. at 3-4). The Government further argues that to the extent Howard claims his plea was involuntary, that argument is procedurally defaulted because he did not challenge the voluntariness of his plea on direct appeal. (Id. at 4).

In Howard's "Traverse to United States's Opposition to Motion to Vacate, Set Aside, or Correct Sentence," he merely reiterates the claims asserted in his brief. (See Doc. 37). In Howard's later filings (Docs. 38, 39), he asserts that his firearm conviction under § 924(c) should be reversed in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015). Howard argues that in Johnson, the Supreme Court struck down as unconstitutionally vague the residual clause in 18 U.S.C. § 924(e), and that the "RESIDUAL CLAUSE" or "CATCH ALL PHRASE" that he was convicted under in § 924(c) is likewise unconstitutionally vague. (Doc. 38 at 1). Howard also requests the appointment of counsel. (Id. at 2; Doc. 39 at 2).

These pleadings are now before the court for review.

## II. DISCUSSION

### 1. Habeas Standard

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008) (quotation marks in original).

## 2.   **Ineffective Assistance of Counsel**

"Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." Green v. Nelson, 595 F.3d 1245, 1249 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland, 466 U.S. at 687). To establish a deficiency, a petitioner must show that "counsel's

representation 'fell below an objective standard of reasonableness.'"  _Wiggins_, 539 U.S. at 521 (quoting _Strickland_, 466 U.S. at 688).

The two-part _Strickland_ standard applies to challenges to the validity of guilty pleas based on claims of ineffective assistance of counsel.  _See_ _Hill v. Lockhart_, 474 U.S. 52, 58 (1985).  Because the failure to demonstrate either deficient performance or prejudice is dispositive of the claim, courts applying the _Strickland_ test "are free to dispose of ineffectiveness claims on either of [_Strickland's_] two grounds."  _Oats v. Singletary_, 141 F.3d 1018, 1023 (11th Cir. 1998).  "[U]nder the exacting rules and presumptions set forth in _Strickland_, 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'"  _Windom v. Sec'y, Dep't of Corr._, 578 F.3d 1227, 1248 (11th Cir. 2009) (citation omitted).  Based upon a careful review of Howard's petition and the record evidence, the undersigned finds that Howard has failed to demonstrate that his counsel provided ineffective representation.

As noted _supra_, Howard argues that his attorney was ineffective because he conducted no investigation into the indictment and his arrest, but instead kept advising Howard to make a proffer to the Government.  (Doc. 33-1 at 2-3).  To prevail, Howard is required to show that his attorney's performance was

deficient and that he was prejudiced as a result. In the instant case, aside from his vague and conclusory assertions that his attorney "refused to investigate the alledged [sic] conspiracy that Petitioner was alledgedly [sic] involved in" and "refused to investigate any circumstances in Petitioner's indictment and arrest[,]" Howard has failed to offer any facts to support this claim. (Id. at 3). He has not given any details or specific information regarding what evidence could have been uncovered with proper investigation or stated what was allegedly deficient about the indictment or arrest warrant. Howard's conclusory assertions do not demonstrate that his attorney was ineffective or that his case was prejudiced. See Randolph v. McNeil, 590 F.3d 1273, 1276 n.1 (11th Cir. 2009) (holding that "conclusory assertions" will not support a claim of ineffective assistance of counsel); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (same); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (addressing the issue in the context of 28 U.S.C. § 2254); Story v. United States, 2012 U.S. Dist. LEXIS 26031, at *20, 2012 WL 671677, at *6 (S.D. Ala. Jan. 31, 2012) (rejecting § 2255 claim of ineffective assistance where movant had not indicated what a more thorough investigation by his attorney would have revealed or how any supposed discovery would have been fruitful in his case).

Howard next contends that his attorney was ineffective because he advised him that he would receive "a less than mandatory

minimum sentence" if he talked to the government and promised him he would "pursue a Motion from the government to reduce Petitioner's sentence" but failed to follow through and failed to respond to Howard's letters to him. (Doc. 33 at 6; Doc. 33-1 at 4). This claim is likewise without merit.

At the guilty plea hearing, Howard, under oath, acknowledged that he had read and signed the plea agreement, that he had discussed it with his attorney, and that he was fully satisfied with his attorney's representation. (Doc. 36). He also testified that no one had promised him anything that was not included in his written plea agreement, which clearly provides that decisions concerning requests to seek sentence reductions based on substantial assistance were in the sole discretion of the Government. (See Docs. 17, 36). In addition, during the plea colloquy, Judge Granade explained to Howard the possible penalties he faced if convicted and stressed that the sentence ultimately imposed might be different than any estimate Howard's attorney or anybody else might have given him in the case. (Doc. 36). Howard acknowledged that he understood and stated that he was entering a guilty plea because he was guilty. (Id.). "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

The record evidence clearly shows that Howard was fully aware of the potential sentence he faced and that he entered into his

plea of his own volition. Thus, the undersigned finds that his claim is without merit. See Langford v. United States, 2009 U.S. Dist. LEXIS 127453, at *25, 2009 WL 6467043, at *9 (S.D. Ala. Oct. 23, 2009), *report and recommendation adopted,* 2010 U.S. Dist. LEXIS 46835, 2010 WL 1949480 (S.D. Ala. May 12, 2010) ("Mere disappointment that a court imposed a harsher sentence tha[n] what one hoped for is not the proper basis for a motion to vacate.").

Not only has Howard failed to show that his attorney's performance was deficient, he has also failed to demonstrate that he suffered prejudice because of it. When a petitioner's conviction is based on a guilty plea, in order to show prejudice, he must show that there is a reasonable probability that, but for counsel's mistakes, he would not have entered a guilty plea and would have insisted on going to trial. Hill, 474 U.S. at 59; Esslinger v. Davis, 44 F.3d 1515, 1529 (11th Cir. 1995).

Howard's self-serving assertions that he fully intended to go to trial and only agreed to enter a plea agreement based on his counsel's promise that if he made a proffer to the government he would get "a less than minimum mandatory sentence" fails to demonstrate prejudice. (Doc. 33-1 at 3). A mere allegation that he would have insisted on going to trial but for counsel's errors, although required, is insufficient to establish prejudice. Rather, "the court must look to the totality of the objective factual circumstances surrounding the plea in order to determine

whether there is a reasonable probability that the petitioner would have in fact insisted on trial." Suarez v. United States, 2017 U.S. Dist. LEXIS 94804, at *13, 2017 WL 3208725, at *5 (S.D. Fla. June 19, 2017), *report and recommendation adopted,* 2017 U.S. Dist. LEXIS 121236, 2017 WL 3206328 (S.D. Fla. July 27, 2017); Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010). This inquiry will often include an assessment of the strength of the prosecution's case, any available defenses the movant could have asserted at trial, the plea colloquy and negotiations, and the movant's potential sentencing exposure. Suarez, 2017 U.S. Dist. LEXIS 94804, at *13, 2017 WL 3208725, at *5.

The factual resume in this case reflects that at trial the Government would have offered evidence that Defendant had at least two prior felony drug convictions, that a confidential informant made a controlled buy of crack cocaine from Howard at his residence, and that during a search of the residence mere days later, officers located crack cocaine totaling 26.7 grams, a digital scale, Xanax bars, four firearms and ammunition, including a firearm located under the pillow on which Howard was sleeping when officers entered the residence, $2,978 in US currency, and other items. (See Doc. 17 at 15-19). Additionally, as part of the plea agreement, Howard acknowledged that the Government could prove that the drug conspiracy charged in count one involved twenty-eight grams or more of a mixture containing a detectable

amount of cocaine base, that the firearms were manufactured outside of Alabama, and that the firearms were used and possessed by him during the drug trafficking crime. (Id. at 19). Moreover, Howard faced penalties of at least ten years to life imprisonment on count one and a consecutive five-year prison sentence on count three. (Id. at 4, Doc. 36 at 10-11).

The factual resume clearly demonstrates that the Government would have presented the jury with significant evidence of Howard's guilt, and he has pointed to no evidence that could have been used to rebut the Government's case. Plus, Howard would have faced a substantially longer prison sentence on count one had he proceeded to trial and lost. Thus, it was quite reasonable for Howard's counsel to advise him to attempt to cooperate with the government, and his self-serving assertion that he would have gone to trial but for his attorney's alleged errors does not suffice to show prejudice in the face of the Government's evidence. Accordingly, his claim must fail.

With respect to Howard's claim that his attorney promised to pursue a motion to reduce his sentence, the claim is flatly contradicted by his testimony at the plea colloquy that no one promised him anything. Further, Howard has offered no facts which suggest that the Government, which has the sole discretion under the plea agreement to seek a reduction in his sentence, was inclined to file such a motion. Thus, Howard cannot establish

that he was prejudiced, even assuming such a promise was made to him.

Finally, Howard's claim that his attorney was ineffective because he did not file a direct appeal is without merit as well. The law is well-settled that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se" and that "to satisfy the prejudice prong of the Strickland test, a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." Gomez-Diaz v. United States, 433 F.3d 788, 791-92 (11th Cir. 2005). Howard cannot satisfy either prong of the Strickland test. First of all, Howard executed a Notice of No Appeal wherein he acknowledged that he had been advised of his right to appeal, had consulted with his attorney about his appeal options, had been given sufficient time to consider those options and required no further explanation, and had determined that "I do not wish to take an appeal." (Doc. 28). In his petition and briefs, Howard makes no attempt to rebut his statements in the Notice of No Appeal. Accordingly, Howard has failed to show that his attorney was ineffective for honoring his specific, informed, written, post-consultation wishes not to pursue an appeal (as specified in the Notice of No Appeal), or that he was prejudiced by his attorney's actions (i.e. that he

actually would have appealed but for his lawyer's omissions). See United States v. Chestang, 2014 U.S. Dist. LEXIS 7481, at *18, 2014 WL 232264, at *5 ((S.D. Ala. Jan. 22, 2014) (finding petitioner's failure to rebut statements from his Notice of Non-Appeal in his § 2255 filings fatal to his ineffective assistance claim predicated on counsel's failure to file a notice of appeal).

## 3. **Johnson Claim**

After Howard's petition had been fully briefed, he sought permission to amend his petition to add a claim that his firearm conviction under § 924(c) for possessing a firearm during a drug trafficking crime should be vacated in light of the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551, 192 L. Ed 2d 569 (2015). He also requested the appointment of counsel. The requested amendment is futile. In Johnson, the Supreme Court held that the residual clause in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), which defines "violent felony" to include any crime that "involves conduct that presents a serious potential risk of physical injury to another[,]" is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. 135 S. Ct. at 2557-58. Howard appears to assert that because there is language in § 924(c) that mirrors that in § 924(e), his firearm conviction under § 924(c) should be set aside. However, the Supreme Court's decision in

Johnson, and those subsequent thereto, such as Sessions v. Dimaya, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018), have no applicability to Howard's case because he was not convicted of carrying a firearm during a *crime of violence*, but he instead pled guilty to possessing a firearm during a drug trafficking offense, the definition of which contains no residual clause. See In re Andre, 2018 U.S. App. LEXIS 35117, at *6 (11th Cir. 2018) ("Thus, Supreme Court law pertaining to the definition of a crime of violence has no relevance to [the petitioner's] conviction for carrying of a firearm during a drug trafficking offense."). Moreover, recently, in Ovalles v. United States, 905 F.3d 1231, 1252 (11th Cir. 2018) (*en banc*), the Eleventh Circuit determined that § 924(c)(3)(B)'s residual clause is not unconstitutionally vague under Johnson and its progeny. See In re Garrett, 908 F.3d 686, 689 (11th Cir. 2018) (reiterating that § 924(c)(3)(B) is not unconstitutionally vague because it embodies a conduct-based instead of a categorical approach) (citing Ovalles, 905 F.3d at 1253); Mann v. United States, 2018 U.S. App. LEXIS 30218, at *6, 2018 WL 5310176, at *3 (11th Cir. Oct. 26, 2018). In light of the above extant case law, Howard's motions to amend his petition should be denied as futile.

## III. **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. See 28 U.S.C. § 2255, Rule

11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Where a habeas petition is being denied, in part, on procedural grounds without reaching the merits of an underlying constitutional claim, "a COA should issued [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is being denied on the merits of an underlying constitutional claim, a certificate of appealability should be issued only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.; see also id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under

[Barefoot v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Howard's claims do not warrant the issuance of a Certificate of Appealability. Reasonable jurists could not debate whether Howard's ineffective assistance of counsel claims and requests to amend his petition should be resolved in a different manner or deserve to proceed further. The recommendation that Howard's claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of his claim on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 33) be **DENIED**, that his requests to amend his petition and for appointment of counsel (Docs. 38, 39) be **DENIED**, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Robert James Howard. The undersigned Magistrate Judge

further opines that Howard is not entitled to issuance of a Certificate of Appealability.

The attached sheet contains important information regarding objections to this Report and Recommendation.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate

Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **9th** day of **January, 2019.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**